## In re BAIRD.

(District Court, W. D. Virginia. January 9, 1904.)

1. BANKRUPTCY—ATTACHMENT LIENS.

More than four months prior to the filing of the petition in bankruptcy, one subsequently adjudicated an involuntary bankrupt, by written contract which was never recorded, sold and agreed to convey real estate. Less than four months prior to the filing of the petition creditors of the vendor levied attachments on the said real estate. After the levy of said attachments, and before the filing of the said petition, the contract of sale was performed by the execution of a deed conveying said real estate, which deed was forthwith recorded. *Held*, that the trustee in bankruptcy of the vendor, and not the attaching creditors, are by Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450], given the benefit of the attachment liens.

2. SAME—SUBROGATION—RIGHTS OF TRUSTEE.

Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], is an enumeration of those properties the title to which passes to the trustee in bankruptcy by operation of law. Therefore the right of subrogation given the trustee by order of court under section 67f (30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]) is properly not mentioned in section 70a.

3. SAME.

The duty of the court to either annul, or to subrogate the trusteee to the benefit of, liens obtained by legal proceedings against one then insolvent, commenced less than four months before the filing of the petition in bankruptcy, is not confined to liens which create a preference.

Hazard Dixon and Saml. Griffin, for trustee.

Scott & Staples, S. Hamilton Graves, and W. Gordon Robertson, for creditors.

McDOWELL, District Judge. C. R. Baird, who did business under the name of C. R. Baird & Co., was the owner of certain real estate situated in this district, known as the "West End Furnace Property." On December 7, 1899, Baird, by written contract, sold the furnace property to the Roanoke Furnace Company in consideration of the issue to Baird of certain shares of the vendee's capital stock and the assumption by the vendee of a purchase-money debt owing on the furnace by Baird to R. E. Tod. This contract was never recorded. On November 5, 1900, Baird executed and delivered to the Roanoke Furnace Company a deed in pursuance of the above-mentioned contract conveying the furnace property, which deed was forthwith recorded. Between October 12 and 31, 1900, at which time Baird was insolvent, some of Baird's creditors sued out from the corporation court of the city of Roanoke, Va., attachments which were levied on the above-mentioned property. On December 24, 1900, other of Baird's creditors filed in the District Court for the Eastern District of Pennsylvania a petition in bankruptcy against him. In due course that court adjudicated Baird a bankrupt. Early in the course of this proceeding ancillary jurisdiction was taken of the cause by this court. The above-mentioned property has been sold by order of court, and the proceeds are deposited to await the determination of the question hereinafter discussed.

By the registry statutes of this state unrecorded contracts of sale and conveyances of real estate are void, at least as to lien creditors. The question here is presented by a petition filed by Staake, trustee, praying that the attachments above mentioned be declared void as regards the creditors who sued them out, but preserved for the benefit of Baird's estate, and by a demurrer to this petition, filed by the attaching creditors. At the hearing all objections to the jurisdiction of this court were withdrawn, and jurisdiction is taken by express consent of all parties.

The demurrer to the petition is intended to raise merely the question as to whether the trustee of Baird's estate or the attaching creditors shall have the benefit of the attachments. By section 67f of the bankrupt law (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]), all attachments obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the attachment shall be deemed wholly discharged and released from the same, and shall pass to the trustee as part of the estate of the bankrupt, unless the court shall on due notice order that the right under such attachment shall be preserved for the benefit of the estate. In the case at bar the attachments were obtained through legal proceedings against Baird within four months of the filing of the petition against him, and he was insolvent at the time. The language of this section so exactly fits the case we have here that some cogent reason must be found before we can properly hold that it does not apply. Counsel for the attaching creditors, in an unusually excellent argument, take the position that the case at bar is not within the intent of the bankrupt law. They argue that it is so unjust and inequitable to take from the attaching creditors the fruits of their diligence, and give them to all the creditors pro rata, that Congress could not have intended the act to apply in a case such as we have here. Nevertheless, counsel for these creditors necessarily admit that, if Baird had never conveyed the furnace, or if his grantee had never recorded the deed, or if Baird had made a fraudulent conveyance, the act plainly takes from the attaching creditors the fruits of their diligence, and gives them to all the creditors pro rata. The argument that the law is unjust or inequitable is certainly as strong in any of the three supposed cases as in the case at bar. While the state law gives to diligent creditors who attach a priority of payment—a preference—over those who do not attach, it is beyond dispute that the intent of the bankrupt law (except as to rights gained more than four months before the filing of the petition in bankruptcy) is just the reverse. The intent of the latter, except as aforesaid, is to prorate all available assets, and to prevent any priority of payment being obtained by any creditor within the four months, whether by consent of the debtor or by the diligence of the creditor. Such being the intent of the law, it seems to me that the argument based on the supposed injustice of the act as applied to the case at bar is not of weight. Such being the intent of the law, it would be surprising if Congress had omitted to provide for the not uncommon

state of facts which we have here. And, as above remarked, the language of section 67f seems entirely adapted to the case we have here, as well as to other possible cases. In cases where the title to the attached property remains in the bankrupt, the liens of attaching creditors are simply annulled, and the proceeds of the property are divided pro rata among all the creditors. In cases where the bankrupt has made a fraudulent conveyance, this deed is by proper proceeding set aside, the attachments are annulled, and the proceeds of the property are prorated among all the creditors. In cases where the bankrupt makes a valid conveyance, or where his fraudulent vendee makes a valid conveyance, the purpose of the law is worked out by preserving and enforcing the liens of the attaching creditors for the pro rata benefit of all the creditors.

It is further argued that the case at bar is not within the intent of the act, because the right here contended for by the trustee is not mentioned in section 70a of the act (30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]). This argument does not seem to me to be of force. Section 70a is an enumeration of those properties the title to which passes to the trustee by operation of law. The right here asked for by the trustee can be given him only by order of court. It would have been inconsistent, even absurd, to have provided in 70a that the rights of attaching creditors in a case such as we have here shall vest in the trustee by operation of law, when it had been provided in 67f that such rights should be vested in the trustee by order of court.

It was further argued that the power to preserve and enforce liens for the benefit of all the creditors is given only as to liens that may be annulled under 67f, that only liens which give a preference are thus to be annulled, and that the liens here do not give a preference. While the argument is ingenious, I cannot assent to its soundness. If the attaching creditors are allowed to have the exclusive benefit of their liens, I do not see why they are not, in effect, allowed a preference. In such event they will be paid in full, while the other creditors will receive only a small proportion of their claims. Again, 67f is not confined to liens that create a preference. Its language expressly embraces all liens obtained as were the liens in the case at bar.

Considerable effort was expended in argument on the proposition that an unrecorded contract of sale or deed is made void by the Virginia statutes only as to lien creditors, and that, even if there were doubt about this as a legal proposition, clause 9 of the agreed facts in effect so states. I see no necessity for discussing these questions. If it were admitted that the right contended for by the trustee had to be found in 70a before such right could be given him, this point might be of considerable interest. But, as above stated, this right could not properly have been mentioned in 70a. The power of the court, and indeed its duty, to take away from the attaching creditors the benefit of their liens and give it to the trustee is found specifically in 67f. To thus construe this section is in line with the undoubted policy of the act, and its language is so sweeping and general that I am constrained to believe that, had Congress not intended such cases as we have here to fall within its purview, some specific provision would have been made excepting such cases. So far as this branch

of the case is concerned, I am of opinion that an order should be made subrogating the trustee to the rights of the attaching creditors in the fund derived from the sale of the furnace property.